Porter, J.
The plaintiffs claim from the defendant a lot of ground, descended to them from their mother, and illegally alienated by their tutor.
The defendant asserts his right to it, under Goodwin, the step-father of the plaintiffs, to whom it was transferred by Girod, their tutor, with other property; in consequence of Goodwin’s abandoning his right to a very considerable portion of the estate of his deceased wife, the plaintiff’s mother.
He has called in his vendor, who, in turn, has cited Girod the tutor. There was judgment for defendant, and the plaintiffs appealed.
The counsel for the appellees urge, that the judgment is correct, as
1. The alienation was legal.
2. If any of the formalities required by Par. 6, 16, 18, had been omitted, the alienation *727 would still be legal; as this is one of the cases in which they are not required.
Feb. 1822.
3. The plaintiffs cannot prevail, without shewing they were injured.
4. The defendant has shewn they were benefited.
5. The alienation has been ratified by two of the plaintiffs.
I. The lot now sued for, three slaves and a house, were alienated on consideration of Goodwin's relinquishment of all claims and pretentions, which he might have on the estate of his deceased wife; such as gains, and other rights granted him by her will. This compromise was made by the tutor without any authorization. On the next day he applied to the judge of probates, for the convocation of a family meeting to deliberate on the affairs of the minors. This meeting approved the transaction, and directed the tutor to sell the rest of the property; but their proceedings were not presented to the judge for ratification.
This transfer is contended to be legal, because it was the result of a compromise, and not a sale; and it has been urged, that tutors do not require the authorization of the judge *728 to enter into contracts of description. Feb. 2. lib. 2, c. 1, n. 85. If we were to give the passage cited by the counsel from this author, the effect which he contends it should have, it appears to me we would destroy the whole policy of our law in relation to minors property. It would follow as a consequence, that the tutor could dispose of all the property of his pupil, without a meeting of the family, without the authority of justice, without any legal solemnities whatever. If he could do all this, the other provisions of the law for the safeguard and protection of persons of a tender age, would be useless, and the benevolence which dictated them completely defeated.
I have not been able to refer to the authorities relied on by Febrero. The law of the Partidas, 5, 5, 4, which is quoted, does not support the conclusion drawn from it. I apprehend the distinction taken by the plaintiffs' counsel is correct; that this power is to be restrained to moveables of inferior value. Murillo, lib. 1, tit. 36, n. 370.
I am more confirmed in this idea, because, every book in our law which treats of the subject, lays down the general principle, that im *729 moveable property of a minor cannot be alienated, even for indispensable causes, without the authorization at the judge. Partidas, 6, 16, 18. id. 5, 5, 4. id. 3. 18, 60. Febrero, 2, lib. 1, cap. 1, sec. 2, n. 85, id. lib. 3, cap. 3. sec. 1, n. 70. Alienationem rei immobilis minoris, etiam evidenter ipsi utilem, non valere sine debita solemnitate et judicis decreto. Castillo, lib. 4, cap. 61, n. 40, et seq. 8 Martin, 632.
I do not think therefore, the exception to the general rule has been sustained by the defendant. Indeed, we find other commentators expressly state, that the tutor cannot make a compromise respecting the immoveable property of the minor, without a judicial decree which sanctions it. Castillo, lib. 4, cap. 61, n. 31. As that decree was not given in this case, we must hold the arrangement between Goodwin and the tutor wanting in the formalities which the law requires.
But, it has been contended, that whether the property of a minor is disposed of, with or without the necessary legal solemnities, the contract cannot be set aside, unless it should appear that he has been injured by it, and that proof of this fact is a sine qua non condition to obtain restitution.
*730 This position has been ably supported.—The counsel principally relies on Partidas, 6, 19, 2 & 6, which declares, that he who sues for restitution should prove two things—that he was a minor at the time he entered into the contract, and that he had made it to his damage and injury.
The plaintiffs meet this by saying that the doctrine contended for by defendant, applies only to what is called restitutio in integrum; against acts valid in themselves, and has not any relation to the recovery of property alienated without the formalities which the law prescribes.
To this it is replied, that the law of the Partidas already referred to, speaks of a sale made by a minor himself, without the assistance of his tutor or curator; that nothing can be more contrary to the dispositions of the law than an act of that description, and that if in the case put, he must prove lesion, much more ought he to be required to prove the injury sustained when he attacks a contract such as this, at which a tutor assisted, and which had the sanction of a family meeting.
This is a concise summary of the arguments on this point.
*731 However difficult it may be to adduce any good reason why different rules were established on this subject, there is no doubt that they exist.
The commentators on the laws of Spain, who treat on the rights of minors to obtain rescission of acts passed during minority, all recognise it. Febrero states, that the contracts of persons under age, contain the vice of nullity (es nula ipso jure) when the legal solemnities have not been observed, or even when observed, restitution can be had, if the minor suffers lesion, whether the contract is made by himself or under the authority of the tutor. Febrero, 2, cap. 3, sec. 1, n. 67 & 83.—In this opinion he is supported by Castillo, Gomez, Murillo, and a variety of other writers, whom they cite in support of the doctrine, Castillo, lib. 4, cap. 61, n. 40. Gomez res., cap, 14, n. 11. Murillo, liv. 1. tit. 41, n. 395 & 399.
And on this principle, that the nullity in the one case is absolute, and that the contract must be shewn to be prejudicial in the other; it became necessary when it was prima facie good, that the minor should commence suit for restitution in integrum; when null on the face of it, by want of the legal solemnities, it *732 was not necessary to resort to that remedy. Febrero. 2, lib. 3, cap. 3, sec. 1. n. 67, 71, 83.
The same distinction was known to the Roman law. Dig. liv. 4. tit. 4. l. 16, n. 3.
Having thus ascertained, that a contract for the property of persons under age, is absolutely null, if entered into without the formalities which the law prescribes; it follows as a consequence, that when they sue for that property, it is not necessary they should shew they have been injured by the contract, because, in truth, as to them, no contract has been made.
It has been pressed on us, that the case put in the Partidas, of a minor contracting without the authority of his tutor, being obliged to prove lesion, is a stronger instance of want of form than any other. But by the laws of Spain, a minor above puberty, and not of full age, could contract in his own name. Par. 3, tit. 18, l. 59. And the form of an oath is prescribed in this law, to render the agreement more binding. 8 Martin. 631.
I conclude, therefore, that the transfer from Girod, tutor of the plaintiffs, to Goodwin, was illegal and void.
An important question, as to the rights of *733 the parties in the suit, still remains. That is, whether the plaintiffs have done any act since they arrived at the age of majority which ratifies and confirms this alienation of their property.
For the better understanding of this point, it is necessary to state the facts somewhat in detail.
The plaintiffs' father died in the year 1803, and their mother in 1808. The year preceding her decease, she married Goodwin. During her widowhood she purchased the property now in dispute.
After her death, an inventory was made, and in it was included property purchased during the second marriage, and designated as follows:— "Thirty-six lots of ground, more or less, conformable to a sale made by Gravier to Goodwin."
The mother of the plaintiffs, by last will and testament, gave to her husband the usufruct of one-fifth of all the property owned by her at her death.
Difficulties arose between Girod, tutor of the minor children, and Goodwin, who claimed the usufruct of the property under the will already mentioned; and also a large sum *734 for acquests and gains made during the marriage. This ended in a compromise, by which the tutor conveyed to the step-father the premises now claimed, and he relinquished all his rights on the succession of his late wife, and all his claim for the acquests and gains.
In the year 1812, Girod was removed from the tutorship, and rendered his account to Anfoux, husband of one of the plaintiffs, who was appointed to succeed him; in this account he debits the minors with the thirty-six lots in the Fauxbourg St. Mary. This account was disputed, and it was expressly alleged in the opposition filed, that Girod had no authority to enter into a compromise of the rights of the minors. The court, in giving judgment, reserved to the heirs their rights on this property.
In the month of December, 1818, the plaintiffs made by public act, a partition of the property purchased by Goodwin during marriage. The minor being represented by a curator, and the others, who were of age, by their agents.
On these facts the defendant insists, that as the plaintiffs, who were of full age, have accepted and partaken among themselves, the *735 property which was relinquished by their stepfather, as the consideration for the present lot; they have approved of this alienation, and cannot recover in this suit.
The law on this point, I understand to be, that if the minor, after he comes to the age of majority, expressly ratifies the alienation, or tacitly approves of it, either by suffering the time prescribed for him to commence his action to expire, or by doing acts in conformity with the transfer of his property, that he cannot afterwards claim it. Febrero, p. 2, chap. 3, sec. 1. n. 88, 90. Because, in the language of the law, la voluntad que se deduce del acto, es mas poderosa, que la que consiste en palabras; the intention which is inferred from the act, is more powerful than that which can be ascertained from words.
I have doubted whether these provisions were intended for cases where, the nullity was absolute, but on examination, I am satisfied it applies as well to cases of that description, as to those when the act has been made in the mode prescribed by law. and the defect alleged is lesion. Febrero, loco citato.
The plaintiffs have not disputed the law, but insist, that the facts proved in this case, *736 do not bring them within its provisions, because they had no knowlege, that the property partaken had been given up by Goodwin.
But I do not see how they can urge this with any success. The inventory states the property to be bought by Goodwin; so that the very instrument which informed them that they had any claim to this property, instructed them of the fact now contested. The sale from Gravier to their step-father, was passed before a notary, and remained in his office. The compromise was a public act; the proceedings had before the court of probates was matter of record. Under this proof, the plea of ignorance cannot be maintained.
They further contend, that the lots partaken by them were paid for by notes and obligations belonging to their mother; and that, therefore, they were her proper effects. But the authority referred to, does not support this position. It is only in the case where, during marriage, the proceeds arising from the sale of one immoveable, has been laid out in the purchase of another, that the object last acquired, is considered as belonging to the owner of that which was sold. Febrero, par. 2. lib. 1, cap, 4. sec. 1, n. 7.
*737 On this point of tacit approbation, I think the whole question may be reduced to this;— could the plaintiffs have legally taken the property purchased by Goodwin during marriage, and divided it, unless they did so in virtue of the compromise entered into by their tutor? I think not. Therefore, in acting as owners of it, we must consider those who were of age, approved of the act by which their tutor acquired the property, and sanctioned the alienation of the lot claimed in the petition, which was given in its place.
As there is not sufficient evidence as to the value of the improvements, nor by whom, nor at what, time they were put on the lot, I think the cause ought to be remanded, in order to obtain evidence on that point, and that the question, as to the rents and profits, remain open until those facts are established.
I conclude, therefore, that the judgment of the parish court should be annulled, avoided and reversed, and that the plaintiff, Antoine Chesneau, do recover of the defendant, the one-third of the lot claimed in the petition; and that this cause be remanded, with directions to the parish judge to permit the parties to proceed, in the course of law, to establish *738 the value of the improvements made on the lot of ground sued for, and by whom they were placed there, and that the defendant and appellees pay the costs of this appeal.
Seghers for the plaintiffs, Derbigny for the defendant.